IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:16-CV-228-D

| | |
|---|---|
| CLIFTON R. HOWARD, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-17, DE-19] pursuant to Fed. R. Civ. P. 12(c). Claimant Clifton R. Howard ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 29, 2013, alleging disability beginning October 16, 2009. (R. 18, 196–97). His claim was denied initially and upon reconsideration. (R. 18, 92–124). Claimant amended his alleged onset date to November 13, 2013. (R. 18, 212–13). A hearing before the Administrative Law Judge ("ALJ") was

held on March 2, 2015, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 18, 37–74). On April 1, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 15–36). On June 21, 2016, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by failing to cite to substantial evidence that Claimant's right hand injury had improved from a previous RFC determination and in weighing the medical opinion evidence. Pl.'s Mem. [DE-18] at 5–8.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: fracture of upper extremity status post crush injury to the right hand; degenerative disc disease of the cervical spine; cervical radiculopathy; adhesive capsulitis in the right shoulder; and mood disorder. (R. 21). The ALJ also found Claimant had nonsevere impairments of carpal tunnel syndrome in the left hand, depression, anxiety, gout, and low back pain. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–23). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living and social functioning, moderate limitations in concentration, persistence, or pace, and no episodes of decompensation. (R. 23).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: frequently push/pull and operate hand controls with the right upper extremity; frequently climb ramps or stairs; occasionally climb ladders,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

ropes, and scaffolds; frequently balance, kneel, crouch, and crawl; no repetitive or constant rotation, flexion, or extension of the neck; frequently reach, reach overhead, handle objects, finger, and feel with the right upper extremity; occasional exposure to unprotected heights, hazardous machinery, or moving mechanical parts; work limited to simple, routine tasks; and must be able to stand for five minutes after sitting for one hour and sit for five minutes after standing and/or walking for one hour. (R. 23–24). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 29–31).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a brake operator, shipping and receiving supervisor, and spray painter. (R. 31). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 31–32).

## V. DISCUSSION

### A. Claimant's Right Hand Limitations

Claimant contends that the ALJ erred in two ways by determining Claimant could frequently use his right hand: (1) by failing to cite substantial evidence of improvement in the time period after a previous RFC determination which imposed more restrictive limitations on Claimant's use of his right hand, in violation of *Albright v. Comm'r of the SSA*, 174 F.3d 473 (4th Cir. 1999), and (2) by failing to properly weigh the opinion of Dr. Virgili, a state agency physician. Pl.'s Mem. [DE-18] at 5–8. In response, the Commissioner argues that substantial evidence supports the ALJ's decision to give only some weight to the previous disability determination and the ALJ made a drafting error while considering the opinion of Dr. Virgili, but Claimant has failed to show how he was harmed

by that error. Def.'s Mem. [DE-20] at 5–9.

### 1. The 2012 RFC Determination

In the instant case, the ALJ determined that Claimant had the RFC to perform light work and could frequently push/pull and operate hand controls with the right upper extremity and frequently reach, reach overhead, handle objects, finger, and feel with the right upper extremity. (R. 23–24). In a decision issued on September 28, 2012 regarding a previous claim, another ALJ determined that Claimant could perform light work with the following relevant restrictions: lift and carry up to 10 pounds with his right hand; occasionally push and pull with the right upper extremity and occasionally handle, finger, and feel with the right hand; and would do best in a position that requires use of the right dominant hand mainly for bracing and assisting. (R. 81–82).

Here, the ALJ stated as follows as to the September 2012 decision:

> [i]n accordance with Acquiescence Ruling 00-1 (4) (*Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473, 4th Circuit, 1999), the undersigned must consider the previous findings of an Administrative Law Judge (ALJ) (Ex. B1A). The undersigned finds that the claimant's subsequent application included additional evidence and issues that were not previously considered. Accordingly, the undersigned gives some weight to the previous ALJ's findings, but finds that new evidence justifies the residual functional capacity contained herein.

(R. 29).

The ALJ also discussed medical evidence from the period in question related to Claimant's treatment for his right hand issues. During a consultative exam in March 2013, Claimant described his right hand pain as constant, diffuse with pushing, pulling, and lifting, and aching and burning. Claimant reported that his pain medication helped for only a couple of hours. Dr. Ahmed, the examiner, recorded that Claimant had full range of motion in both upper and lower extremities and spine, 5/5 muscle strength, intact sensation, could raise his arms overhead and perform dextrous

movements, and noted that Claimant's right hand examination was benign. (R. 25 (citing R. 432–36). That same month, an x-ray examination of Claimant's right hand was unremarkable and revealed no evidence of fracture or dislocation; skeletal structures were normally mineralized and joint spaces were well-maintained; no periarticular erosions or soft tissue calcifications were present; and alignment was normal. (R. 25 (citing R. 431)).

During a July 2013 evaluation for right upper extremity pain, Dr. Bosley did not see anything structurally wrong with Claimant's right upper extremity; noted that Claimant had good range of motion and his strength was limited somewhat by effort; and plain films indicated no evidence of any bony abnormality. (R. 25 (citing R. 442–44)). In September 2013, Claimant complained of pain in his right hand, arm, and neck; a sensory exam revealed reduced pinprick and light touch distal to the wrist at the right hand and in the right forearm; Claimant had intact coordination in finger to nose and fine finger movements; and Claimant had weakness of the right triceps, biceps, interossel, and opponens.[2] (R. 25 (citing R. 461–67)). Treatment notes from November 2014 do not directly reference Claimant's right hand pain, but document that Claimant had no edema or tenderness in his extremities. (R. 26 (citing R. 520–36)).

The SSA issued Acquiescence Ruling 00-1(4) on January 12, 2000, which interpreted *Albright* as holding the following:

> where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

---

[2] The ALJ's decision states that the "motor exam showed no weakness" (R. 25), but the treatment note documents some muscle weakness in Claimant's right upper extremity (R. 462).

7

AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000). When weighing a prior finding, an ALJ should consider:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

*Id.* An ALJ does not have to explicitly discuss each factor or state the weight given to each previous finding in order to comply with AR 00-1(4), rather, it must be clear that the ALJ considered the previous determination when evaluating the entire record. *Melvin v. Astrue*, 602 F. Supp. 2d 694, 702 (E.D.N.C. 2009) ("Although the ALJ did not specifically refer to AR 00-1(4) . . . or explain the precise weight he gave the ALJ's findings . . . the ALJ did *consider* the prior ALJ's findings as part of reviewing the record.").

Here, the ALJ expressly stated that he was considering the 2012 decision pursuant to AR 00-1(4) and *Albright*, and also the weight afforded that opinion. (R. 29) ("The undersigned finds that the claimant's subsequent application included additional evidence and issues that were not previously considered. Accordingly, the undersigned gives some weight to the previous ALJ's findings . . . ."). Claimant argues that the ALJ does not cite to specific evidence of improvement in Claimant's right hand. Pl.'s Mem. [DE-18] at 6. However, the ALJ's discussion of Claimant's medical records shows that he considered treatment notes revealing Claimant had improvement in his right hand since the 2012 ALJ decision, including findings of full range of motion in his right upper extremity, the ability to raise his arms overhead and perform dexterous hand movements, an unremarkable x-ray of his right hand, no evidence of bony abnormality in the right hand, and reduced

pinprick and light touch distal to the wrist. (R. 25). Claimant points to specific pieces of medical evidence he argues demonstrate that his right hand condition is deteriorating due to new conditions and symptoms, Pl.'s Mem. [DE-18] at 6, but the ALJ considered that evidence in his review of the medical records (R. 25–26). Moreover, it is insufficient for Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at *14 (E.D.N.C. Jan. 10, 2008), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ properly considered the 2012 determination, and explicitly analyzed it in accordance with AR 00-1(4), giving reasons supported by substantial evidence for the weight afforded it. Accordingly, Claimant's argument as to this point is without merit.

### 2. Dr. Virgili's Opinion

Dr. Virgili, a state agency consultant, reviewed Claimant's medical records and authored the physical RFC assessment at the initial level. (R. 99–101). Dr. Virgili opined that Claimant could perform occasional pushing and/or pulling (including operation of hand and/or foot controls) with his right upper extremity, could occasionally perform right overhead reaching in front or laterally, and could occasionally perform handling (gross manipulation), fingering (fine manipulation), and feeling (skin receptors) with his right hand. *Id.* The ALJ discussed Dr. Virgili's opinion as follows:

> The State Agency medical consultant, Frank Virgili, M.D., opined that the claimant could perform light work with additional postural, manipulative and environmental limitations (Ex. B2A). At the recon level, Melvin L. Clayton, M.D., opined that the claimant could do medium work with additional postural manipulative and environmental limitations (Ex. B4A). The undersigned gives these opinions some weight, as medical evidence received at the hearing level, such as Exhibits B10F and B15F, shows that the claimant is more limited than determined by the State agency medical consultants . . . .

9

(R. 29).

In determining a claimant's RFC, the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 WL 374184, at *7. Additionally, the regulations provide that

> [w]hen an [ALJ] considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the [ALJ] will evaluate the findings using the relevant factors . . . such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(e)(2)(ii). *But see* 20 C.F.R. § 404.1527(c) (discussing how generally, medical opinions from treating and examining physicians are afforded more weight than opinions from nonexamining and nontreating physicians because of the longitudinal treatment relationship). Here, Dr. Virgili's opinion that Claimant could only occasionally perform reaching, handling, fingering, and feeling with his right hand conflicts with the RFC determination that Claimant could perform these functions frequently with his right hand. (R. 23). Additionally, the weight given this opinion is unclear where the ALJ stated he afforded it some weight because the medical evidence demonstrated Claimant was more limited than the state agency consultants opined, but the RFC was actually less restrictive than Dr. Virgili's opinion. (R. 23, 29).

The Commissioner argues that the ALJ's decision contains a drafting error where it states that the new evidence demonstrated Claimant was more limited than opined by both state agency

10

reviewers. Def.'s Mem. [DE-20] at 8–9. According to the Commissioner, the ALJ "meant that the evidence showed [Claimant] was more limited than opined by Dr. Clayton and less limited than opined by Dr. Virgili[,]" and the Commissioner argues that the new evidence received since the 2012 ALJ determination demonstrated improvement in Claimant's right hand functioning and supported a less restrictive RFC than Dr. Virgili had opined. *Id.* at 9. The Commissioner cites to *Garner v. Astrue*, 436 F. App'x 224, 226, 2011 WL 2451723 (4th Cir. 2011), for the proposition that the ALJ committed a drafting error which is harmless where Claimant failed to show he was harmed by it. Def.'s Mem. [DE-20] at 8. However, *Garner* is distinguishable where in that case, the ALJ failed to classify certain impairments as severe but clearly considered those impairments in the rest of the analysis—there was no unresolved conflicting evidence. 436 F. App'x at 226.

Here, Dr. Virgili opined that Claimant could only perform certain functions with his right upper extremity on an occasional basis, which conflicts with the RFC finding that Claimant can perform those functions frequently. Where there is conflicting evidence in the record, it is the province of the ALJ to resolve the inconsistencies, leaving the court to review whether the ALJ's determination is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (citations omitted). The Commissioner argues that it is clear what weight the ALJ intended to give to Dr. Virgili's opinion, but this argument is unconvincing given the district court's limited scope of review of the final agency decision and the fact that Dr. Virgili's opinion conflicts with the RFC finding. "Without an explanation from the ALJ to reconcile this apparent discrepancy, the undersigned is unable to determine if the ALJ intended to give little weight to [the] opinion or if the ALJ inadvertently overlooked key aspects of it." *Pulliam v. Colvin*, No. 1:13CV176, 2016 WL 843307, at *4 (M.D.N.C. Mar. 1, 2016) (footnote omitted) (remanding a decision where the ALJ found the

11

claimant could maintain focus throughout the workday and failed to state the weight given to a medical opinion finding claimant had difficulty with tasks requiring concentration and focus). And the Fourth Circuit has made clear that it is not the role of the court to remedy such failures by engaging in the required analysis in the first instance. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (per curiam) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)). Accordingly, it is recommended that the case be remanded for the ALJ to properly express the weight given to Dr. Virgili's opinion.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-17] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 8, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules),

72.4(b), E.D.N.C. Any response to objections shall be filed within **10 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Submitted, this the 25th day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge